United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY HANNA,
   Plaintiff,
  v.

J. CHUDY, et al.,
   Defendants.

Case No. 11-cv-00862-JST (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
Re: Dkt. Nos. 80, 86

## INTRODUCTION

Plaintiff, a California prisoner currently incarcerated at Valley State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983 against staff and officials at the Correctional Training Facility in Soledad, California ("CTF"), where he was previously incarcerated. Specifically, plaintiff alleges that defendant CTF Chief Medical Officer J. Chudy ("Dr. Chudy") denied plaintiff certain accommodations following plaintiff's June 2010 back fusion surgery. Plaintiff also alleges that Dr. Chudy, as well as defendants G. Ellis, C. Hammond, and D. Foston denied plaintiff's administrative appeals concerning these accommodations. The Court found that, liberally construed, the complaint stated a cognizable claim for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.

Now before the Court is defendants' motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. Plaintiff has also filed a cross-motion for summary judgment.

# BACKGROUND

## I. Allegations

Defendant Dr. Chudy was the Chief Medical Officer at CTF during the incidents giving rise to this action. (Compl. at 4, 6, 24-25.[1]) Plaintiff claims that Dr. Chudy erroneously denied certain accommodations following his June 2010 back surgery. (Id.) The accommodations at issue are: (1) ground floor housing, (2) a wedge pillow, (3) a back brace and cane, (4) orthopedic shoes, and (5) physical therapy. (Id.)[2] Plaintiff also claims that Dr. Chudy erroneously denied his inmate appeal at the second level of review concerning the accommodations he claims he needed following his June 2010 back surgery. (Id.)

Defendant G. Ellis is the Chief Executive Officer (CEO) at CTF. (Compl. at 7, 24-25.) Plaintiff claims that Ellis erroneously denied his inmate appeal at the second level of review concerning the accommodations he claims he needed following his June 2010 back surgery. (Id.)

Defendant C. Hammond is an appeals examiner with the Office of Appeals. (Compl. at 8, 18-19.) Plaintiff alleges that Hammond erroneously denied his inmate appeal at the third level of review concerning the accommodations he claims he needed following his June 2010 back surgery. (Id.)

Defendant D. Foston was the Chief of the Office of Appeals during the incidents giving rise to this action. (Compl. at 4, 9, 18-19.) Plaintiff alleges that Foston failed to properly supervise Hammond regarding the denial of plaintiff's inmate appeal at the third level of review concerning the accommodations he claims he needed following his June 2010 back surgery. (Id.)

## II. Background Facts

The following facts are undisputed unless otherwise noted:

### A. Issuance of Comprehensive Accommodation Chronos

---

[1] The page numbers used herein for this document refer to those affixed to the top of the page by the court's electronic filing program.

[2] Plaintiff does not allege that he was denied necessary medication. (See Pl. Opp'n. at 28.)

2

Pursuant to the class action in Plata v. Brown, health care of inmates housed in CDCR's institutions is governed by California Correctional Health Care Services (CCHCS). See Plata v. Brown, No. 3:01cv1351-TEH (N.D. Cal. filed April 5, 2001). CCHCS's policies and procedures governing the delivery of medical care to patient-inmates are delineated in its Inmate Medical Services Policies & Procedures manual (IMSPP). (Chudy Decl. ¶ 10, Ex. C.)

Under the IMSPP, CDCR health care staff shall complete a CDCR Form 7410, Comprehensive Accommodation Chrono, for accommodations that are medically necessary or are required under the Americans with Disabilities Act. (Id.) The purpose of the CDCR Form 7410 is to document temporary and permanent health accommodation information in a systematic and uniform manner and minimize the disruption of needed accommodations that could result from inmate-patient movement. (Id.)

The inmate-patient's Primary Care Provider ("PCP") shall complete the CDCR Form 7410 and forward a copy of it to the institution's Health Care Manager ("HCM") or Chief Medical Officer ("CMO") for review and approval. (Id.) The PCP shall document the expiration date for temporary accommodations on the CDCR Form 7410. (Id.) For accommodations that are designated as permanent, the accommodation must be reviewed annually. (Id.) The HCM or CMO shall sign the CDCR Form 7410 and shall indicate which items are approved or denied. (Id.)

**B.     Plaintiff's Surgery**

On or about June 18 or 19, 2010, plaintiff was admitted to CTF's Outpatient Housing Unit ("OHU") for stabilization and pain management following back surgery (lumbar laminectomy with fusion) that occurred on or about June 14, 2010. (Kalisher Decl. Ex. A; Chudy Decl. Ex. A (CTF000051).)

A lumbar laminectomy is typically performed to alleviate pain caused by neural impingement. (Chudy Decl. ¶ 6.) The procedure is designed to remove a small portion of the bone over the nerve root and/or disc material from under the nerve root to give the nerve root more space and a better healing environment. (Id.) Spinal fusion is a surgical technique used to join two or more vertebrae. (Id. at ¶ 7.) Supplementary bone tissue is used in conjunction with the body's natural bone growth processes to fuse the vertebrae. (Id.) Fusing of the spine is used

primarily to eliminate the pain caused by abnormal motion of the vertebrae by immobilizing the faulty vertebrae themselves, which is usually caused by degenerative conditions. (Id.) As part of the procedure, the fused vertebrae are fixed in place with screws and/or wire through the pedicles of each vertebra attaching to a metal rod on each side of the vertebrae. (Id.)

Plaintiff was released from the OHU, and to his yard, on June 28, 2010. (Pl. Decl. at 1.) Following the surgery, plaintiff was granted a bottom bunk, ground-floor housing, orthopedic shoes and lifts, pain medication, and physical therapy. (Rossetti Decl., Ex. B (CTF000002-CTF000011); Chudy Decl., Ex. A (CTF000028-CTF000049); MacLachlan, Ex. A.) Plaintiff also received a cane and back brace on a temporary basis. (Rossetti Decl., Ex. B (CTF000002-CTF000011); Chudy Decl., Ex. A (CTF000028-CTF000038).) Extensions of time sought by plaintiff on both accommodations were determined to be medically unnecessary. (Rossetti Decl., Ex. B (CTF000002-CTF000011); Chudy Decl. ¶¶ 27-35 & Exs. A (CTF000028-CTF000038), F; Ellis Decl. ¶¶ 6-12 & Exs. A, B; Hammond Decl. ¶¶ 6-9 & Ex. A.) The wedge pillow is the only accommodation plaintiff did not receive. (Chudy Decl. ¶ 14 & Ex. A (CTF000028, CTF000033).) Instead, plaintiff received an extra regular pillow and extra mattress. (Chudy Decl., Ex. A (CTF000028-CTF000038).)

Plaintiff was incarcerated at CTF until December 7, 2011, when he was transferred to another prison. (Rosetti Decl. Ex. B (CTF000001).)

**DISCUSSION**

**I.      Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

4

1 party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an
2 essential element of the nonmoving party's case necessarily renders all other facts immaterial."
3 See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial
4 burden of identifying those portions of the record that demonstrate the absence of a genuine issue
5 of material fact.  Id.  The burden then shifts to the nonmoving party to "go beyond the pleadings
6 and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on
7 file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See id. at 324 (citing
8 Fed. R. Civ. P. 56(e) (amended 2010)).

9       For purposes of summary judgment, the court must view the evidence in the light most
10 favorable to the nonmoving party; if the evidence produced by the moving party conflicts with
11 evidence produced by the nonmoving party, the court must assume the truth of the evidence
12 submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir.
13 1999).  The court's function on a summary judgment motion is not to make credibility
14 determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W.
15 Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

16       A district court may only consider admissible evidence in ruling on a motion for summary
17 judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).
18 Here, plaintiff has verified his complaint and his declaration in opposition to defendants' motion
19 for summary judgment by signing the documents under penalty of perjury, and, for purposes of the
20 instant order, the Court construes those documents as affidavits in opposition to defendants'
21 motion.  See Schroeder v. McDonald, 55 F.3d 454, 460 & n.10 (9th Cir. 1995) (finding complaint
22 signed under penalty of perjury constituted admissible evidence).

23 **II.  Analysis**

24       Deliberate indifference to a serious medical need violates the Eighth Amendment's
25 proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104
26 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by
27 WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v.
28 Johnson, 781 F.2d 769, 771 (9th Cir. 1986).  A determination of "deliberate indifference" involves

1    an examination of two elements: the seriousness of the prisoner's medical need and the nature of
2    the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

3          A "serious" medical need exists if the failure to treat a prisoner's condition could result in
4    further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d
5    at 1059 (citing Estelle, 429 U.S. at 104). The "existence of chronic and substantial pain [is an] . . .
6    indication[] that a prisoner has a 'serious' need for medical treatment." Id. at 1060.

7          A prison official is deliberately indifferent if he knows that a prisoner faces a substantial
8    risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer
9    v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from
10   which the inference could be drawn that a substantial risk of serious harm exists," but he "must
11   also draw the inference." Id. If a prison official should have been aware of the risk but was not,
12   then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v.
13   County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

14         A showing of nothing more than a difference of medical opinion as to the need to pursue
15   one course of treatment over another is insufficient, as a matter of law, to establish deliberate
16   indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004); Sanchez v. Vild,
17   891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970). In
18   order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff
19   must show that the course of treatment the doctor chose was medically unacceptable under the
20   circumstances and that he chose this course in conscious disregard of an excessive risk to
21   plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.
22   1996) (citing Farmer, 511 U.S. at 837).

23         Defendants argue they are entitled to summary judgment on plaintiff's Eighth Amendment
24   claim for deliberate indifference to medical needs on the ground that there are no material facts in
25   dispute. Defendants add that, assuming their actions are found to be unconstitutional, it would not

have been clear to a reasonable official that such conduct was unlawful and that therefore they are entitled to qualified immunity.[3]

### A.     Defendant Dr. Chudy

Plaintiff's claims against Dr. Chudy fail because he fails to show the second subjective prong:  that Dr. Chudy was, subjectively, deliberately indifferent to plaintiff's health or safety.  See Farmer, 511 U.S. at 834.  Assuming that plaintiff had a serious medical condition, there is an absence of evidence that Dr. Chudy knew that plaintiff faced a substantial risk of harm and consciously disregarded it by failing to take reasonable steps to abate it.  Id. at 837.  As noted above, the allegations against Dr. Chudy arise out of his purported denial of the following accommodations: (1) ground-floor housing, (2) a wedge pillow, (3) a back brace and cane, (4) orthopedic shoes, and (5) physical therapy.  The Court addresses below each of plaintiff's claims in turn; the facts are undisputed unless otherwise noted.

#### 1.     Ground-Floor Housing

With respect to ground-floor housing, the undisputed evidence shows that between June 18, 2010 and September 23, 2010, plaintiff was issued nine Form CDCR 7410 Comprehensive Accommodation Chronos approving plaintiff's initial and continued housing in a ground-floor cell at CTF.  (Rosetti Decl. Ex. B (CTF000002-CTF000011); Chudy Decl., Ex. A (CTF000028-CTF000038).)  These chronos provided him with ground-floor housing through approximately November 2010.  (Id.)  Eight of these chronos were directly approved by Dr. Chudy.  (Id.)  Plaintiff argues in his opposition that, on November 23, 2010, his ground-floor housing accommodation chrono was taken away.  (Pl. Opp'n. at 10-11.)  However, the undisputed evidence shows that Dr. Chudy was not involved in the November 23, 2010 decision to discontinue ground-floor housing.   (Rosetti Decl. Ex. B (CTF000011); Chudy Decl., Ex. A (CTF000038).)

Plaintiff asserts that Dr. Chudy, when he reviewed plaintiff's medical appeal at the second level of review, should have seen that plaintiff's PCP had previously recommended ground-floor

---

[3]  As set forth below, the Court finds that defendants are entitled to summary judgment on the merits of plaintiff's Eighth Amendment claims, thereby obviating the need to address their argument that they are shielded from liability on the theory of qualified immunity.

1   housing. (Pl. Reply at 7.) The record shows, however, that Dr. Chudy issued a second-level

2   decision on November 16, 2010, i.e., before the date plaintiff alleges that his ground-floor housing

3   accommodation chrono was taken away. (Compl. at 24-25.) The record also shows that ground-

4   floor housing was not an issue in the second-level appeal because this accommodation had already

5   been granted at the first level of review. (See id.)

6   Accordingly, the November 23, 2010 denial of the ground-floor housing accommodation

7   was not a result of Dr. Chudy acting with deliberate indifference to a serious medical need.

### 2. Wedge Pillow

With respect to the wedge pillow, the undisputed evidence shows that on June 18, 2010 and July 18, 2010, Chudy denied two separate chronos requesting use of a wedge pillow. (Rossetti Decl., Ex. B (CTF000002, CTF000006).) However, on three separate occasions, Dr. Chudy approved chronos authorizing plaintiff to use an extra regular pillow, with the latest occurring on August 12, 2010, when the extra pillow was approved for a year (through August 12, 2011). (Rossetti Decl., Ex. B (CTF000007-CTF000009).) Additionally, from June 18, 2010 to November 23, 2010, plaintiff was issued nine Form CDCR 7410 Comprehensive Accommodation Chronos authorizing plaintiff to use an extra mattress. (Rossetti Decl., Ex. B (CTF000002-CTF000011).) Dr. Chudy directly approved seven of the ten requests. (Id.) On November 23, 2010, Dr. Chudy approved the extra mattress as permanent, subject to annual review. (Rossetti Decl., Ex. B (CTF000011).)[4]

Plaintiff's opposition offers no support for his alleged need for a wedge pillow other than that it was originally approved by Dr. Norden, plaintiff's PCP, on May 26, 2010. (See Pl. Opp'n. at 11, 23.) However, as CMO at the time, Dr. Chudy disagreed with this determination. (Rossetti

---

[4] Plaintiff asserts in his opposition that Dr. Chudy generated a new chrono on September 22, 2010 which omitted reference to the extra mattress and extra pillow. (Pl. Opp'n. at 11-12.) Plaintiff further asserts that because this chrono superseded previous chronos, he went without the extra mattress and extra pillow for 61 days. (See id.; Pl. Decl. at 3-4.) However, plaintiff does not establish that the omission was the result of Dr. Chudy acting with deliberate indifference. The Court also notes that plaintiff has not alleged a claim for denial of an extra mattress or extra pillow in this action. His complaint alleges deliberate indifference based on the denial of a wedge pillow specifically.

8

Decl., Ex. A (CTF00002).) A difference of opinion as to treatment, as a matter of law, does not give rise to a section 1983 deliberate indifference claim. Jackson, 90 F.3d at 332.

Finally, Dr. Chudy has submitted a declaration setting forth his professional opinion that a wedge pillow is primarily prescribed for patients with lung disease, including chronic obstructive pulmonary disease and emphysema. (Chudy Decl. ¶ 14.) The wedge pillow, when used by a patient lying on a bed elevated at a 34-to-45-degree angle, assists the patient with breathing. (Id.) A wedge pillow is not typically prescribed to back-fusion patients. (Id.) Instead, a regular pillow can be provided. (Id.) Plaintiff has failed to come forward with specific facts to support any findings to the contrary.

Accordingly, there is no genuine factual dispute as to whether Dr. Chudy was deliberately indifferent to plaintiff's medical needs when he denied plaintiff's requests for a wedge pillow.

### 3. Back Brace and Cane

With respect to the back brace and cane, the undisputed evidence shows that from June 18, 2010 to August 12, 2010, plaintiff was issued seven Form CDCR 7410 Comprehensive Accommodation Chronos authorizing plaintiff's use of a back brace and five chronos authorizing plaintiff's use of a cane. (Rossetti Decl., Ex. B (CTF000002-CTF000011).) Both accommodations were approved through approximately November 2010. (Rossetti Decl., Ex. B (CTF000009).)[5]

In his opposition, plaintiff claims the back brace and cane should have been provided for a longer period of time. (Pl. Opp'n. at 12-13, 25-26.) He relies on six CDCR Form 128-C chronos documenting his physical limitations between May 2010 and November 2011. (See id.) However, none of these chronos specify any further need for a back brace and/or cane beyond November 2010. Plaintiff's claimed continued need for a back brace and cane is based entirely on self-reporting with no support in the record. Plaintiff does not raise a triable issue of fact with his

---

[5] As with the extra pillow and extra mattress, plaintiff again asserts that Dr. Chudy omitted the back brace and cane in his September 22, 2010 chrono. (Pl. Opp'n. at 25-26.) The record of plaintiff's administrative appeal, however, shows that the back brace and cane were not taken away and that CTF honored the chrono approving the back brace and cane through November 2010. (Compl. at 22.)

statements because he does not present any evidence that he has the requisite medical expertise to diagnose himself or to assess treatment options. See Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988) (appropriate standard of care for medical treatment can only be established by expert medical testimony; inmate plaintiff's allegations supported only by lay opinions failed to present a triable issue of fact).

Accordingly, there is no genuine factual dispute as to whether Dr. Chudy was deliberately indifferent to plaintiff's medical needs in his handling of back brace and cane accommodations.

### 4. Orthopedic Shoes

With respect to orthopedic shoes, the undisputed evidence shows that on or about June 18, 2010, Dr. Chudy approved plaintiff's receipt of orthopedic shoes and inserts. (Rossetti Decl., Ex. B (CTF000002).) Dr. Chudy renewed the accommodation on August 12, 2010, when he approved the orthopedic shoes for another year (to August 12, 2011). (Rossetti Decl., Ex. B (CTF000009).) Accommodations for a left shoe lift and orthopedic shoes were approved as permanent on September 22, 2010 and November 23, 2010 respectively. (Rossetti Decl., Ex. B (CTF000010-CTF000011).)

In his opposition, plaintiff asserts that Dr. Chudy did not approve a podiatrist visit for the left shoe lift until 2011, causing plaintiff to not receive the shoe lift until April 2012. (Opp'n. at 15, 26.) Plaintiff submits no evidence showing Dr. Chudy was responsible for, or even aware of, the delay in providing the orthotics consultation or orthopedic shoe lift to plaintiff. Even assuming, however, that Dr. Chudy was somehow responsible, plaintiff's claim regarding the shoe lift may be characterized, at worst, as a delay in treatment. Deliberate indifference may occur when prison officials intentionally deny or delay medical care. Estelle, 429 U.S. at 104-05. Where an inmate alleges delay in receiving medical treatment, however, the delay itself must have led to further injury or harm. McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Here, there is no evidence indicating plaintiff's condition was in any manner worsened as a result of his waiting, let alone that the wait was the result of deliberate indifference to his condition.

Accordingly, there is no genuine factual dispute as to whether Dr. Chudy was deliberately indifferent to plaintiff's medical needs in his handling of plaintiff's orthopedic accommodations.

### 5. Physical Therapy

With respect to physical therapy, the undisputed evidence shows that plaintiff received physical therapy following his June 2010 back surgery. (Ellis Decl., Ex. B; Chudy Decl., Exs. A (CTF000039-CTF000049), F.) Specifically, plaintiff received physical therapy with M. Siegel, P.T., from approximately August 2010 to September 2010 and from approximately December 2010 to January 2011. (Id.)

In his opposition, plaintiff asserts that he was entitled to more frequent sessions of physical therapy as well as physical therapy beyond January 2011. (Pl. Opp'n. at 13, 27.) Again, plaintiff makes much of the recommendations of other medical providers. Specifically, plaintiff points to the September 21, 2010 medical follow-up notes of his neurological surgeon, Dr. Ramberg, recommending that plaintiff "continue with the physical therapy <u>if it is available</u> two times per week." (Chudy Decl. Ex. A (CTF000024) (emphasis added).) Plaintiff also points to the October 4, 2010 medical progress notes of his CTF PCP, Dr. Madd, referring plaintiff to physical therapy. (Chudy Decl. Ex. F, Dkt 80-2, at 78.) However, these recommendations were consistent with plaintiff's treatment. Plaintiff admits that he received several sessions of physical therapy in January 2011. (Pl. Opp'n. at 14.) There is no evidence indicating plaintiff's condition was in any manner worsened as a result of his waiting, let alone that the wait was the result of deliberate indifference to his condition. Nor is there any evidence that plaintiff needed physical therapy beyond January 2011, let alone that Dr. Chudy was deliberately indifferent to any such need. To the extent that plaintiff argues that Dr. Chudy should have concluded that additional physical therapy was necessary from the medical notes, plaintiff has only made a showing of a difference of opinion as to treatment which, as a matter of law, does not give rise to a section 1983 deliberate indifference claim. <u>Jackson</u>, 90 F.3d at 332.

Accordingly, there is no genuine factual dispute as to whether Dr. Chudy was deliberately indifferent to plaintiff's medical needs in his handling of plaintiff's referrals to physical therapy.

### B. Defendants Dr. Chudy, Ellis, and Hammond

Plaintiff claims that defendants Dr. Chudy, Ellis, and Hammond erroneously denied plaintiff's inmate appeal at the second and third levels of review. The appeal concerned the accommodations plaintiff claims he needed following his June 2010 back surgery.

As discussed above, plaintiff has not raised a disputed issue of material fact that CTF's CMO, Dr. Chudy, was deliberately indifferent to his serious medical needs in his handling of plaintiff's accommodations. Therefore, defendants' denial of the inmate grievance appealing Dr. Chudy's decisions would not rise to the level of deliberate indifference to plaintiff's serious medical needs. The Court notes that, in addition to the accommodations discussed above, plaintiff's appeal requested work unassignment, a lower bunk, and a monthly visit with his PCP for a year. (Compl. at 22-23.) Plaintiff was granted work unassignment and a lower bunk. (See id.) Plaintiff's request for monthly physician visits was partially granted insofar as plaintiff's PCP would determine his follow-up needs based on his overall health status. (See Compl. at 22-23, 25.) To the extent plaintiff bases his claim on the partial denial of his request for monthly physician visits, there is no evidence indicating plaintiff's condition was in any manner worsened as a result of such denial, let alone that the partial denial was the result of deliberate indifference to his condition.

Accordingly, Dr. Chudy, Ellis, and Hammond are entitled to summary judgment on plaintiff's deliberate indifference claim premised on their allegedly erroneous handling of plaintiff's inmate appeal.

### C. Defendant Foston

Plaintiff claims that defendant Foston failed to properly supervise Hammond regarding the denial of plaintiff's inmate appeal at the third level of review concerning the accommodations he claims he needed following his June 2010 back surgery.

A supervisor may be liable under section 1983 upon a showing of: (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Henry A. v. Willden, 678 F.3d 991, 1003-04 (9th Cir. 2012). However, a supervisor cannot be held liable in the absence of an

12

underlying constitutional violation. Jackson v. City of Bremerton, 268 F.3d 646, 653-54 (9th Cir. 2001).

As discussed above, plaintiff has failed to raise a triable issue of material fact that defendants were deliberately indifferent to his serious medical needs. Therefore, plaintiff has failed to produce sufficient evidence regarding an essential element of his supervisory liability claim, i.e., an underlying constitutional violation. Further, the undisputed facts show that Foston did not supervise Hammond in his handling of plaintiff's appeal. (Foston Decl. ¶ 11.) Although the signature block on the third-level response referenced Foston, the actual signature endorsing Hammond's decision was not Foston's signature. (Foston Decl. ¶ 11 & Ex. B.) Therefore, plaintiff has failed to produce evidence of Foston's personal involvement in or any other connection to Hammond's decision.

Accordingly, defendant Foston is entitled to summary judgment on this claim.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED.

The Clerk shall enter judgment for defendants and close the file.

This order terminates Docket Nos. 80 and 86.

**IT IS SO ORDERED.**

Dated: September 16, 2014

_____
JON S. TIGAR
United States District Judge